IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LAURA ROUTSALAINEN,** an individual,

    Plaintiff,

v.

**LEGACY HEALTH,** a corporation,

    Defendant.

No. 3:24-cv-01042-MO

OPINION AND ORDER

**MOSMAN, J.,**

    This matter comes before me on Defendant's Motion ("Mot.") to Dismiss [10]. For the reasons stated below, I GRANT Defendant's Motion.

## BACKGROUND

    Plaintiff Laura Ruotsalainen[1] was a registered nurse employed by Defendant Legacy Health when it implemented a vaccination policy to comply with Oregon's mandate that all healthcare workers either be vaccinated against COVID-19 or have a documented medical or religious exemption in place by October 18, 2021. Complaint ("Compl.") [1] ¶ 7. Ms. Ruotsalainen submitted a medical exemption request on September 1, 2021, through a two and half page typed document that describes her life journey and allegiance to Legacy. Declaration of Sophie Shaddy-Farnsworth ("Shaddy-Farnsworth Decl.") [11] Ex. 4. In that document, she refuses to explain how her religious beliefs prevent her from receiving the vaccine, stating "NO, I am not

---

[1] Plaintiff's name was misspelled in the initial case pleading. *See* Mot. [10] at 1.

1 – OPINION AND ORDER

explaining my religious beliefs to you. NO, I am not taking a vaccine into my body against my will. NO! I will not give consent. The answer is NO to the abuse of my body autonomy. NO!" *Id.* at 2. She attached eight pages of compiled information related to COVID treatments other than vaccination, such as ivermectin, nebulized budesonide, and nebulized hydrogen peroxide, among others. *Id.* at 4-12. Legacy declined her exemption request and terminated her employment on October 19, 2021. Compl. [1] ¶ 17.

Ms. Ruotsalainen filed an administrative complaint with the Oregon Bureau of Labor and Industries ("BOLI"), requesting that it be cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), on August 13, 2022. Shaddy-Farnsworth Decl. [11] Ex. 1. On February 10, 2023, BOLI dismissed her complaint and issued a notice of her right to file a civil suit. *Id.* at Ex. 2. On March 28, 2024, the EEOC issued its notice of Ms. Ruotsalainen's right to file a civil suit. *Id.* at Ex. 3. She filed this lawsuit on June 26, 2024. Compl. [1].

Ms. Ruotsalainen initially brought two discrimination claims, one federal and one state, on multiple theories, including failure-to-accommodate, disparate treatment, disparate impact, wrongful reduction in pay, retaliation, pattern-or-practice discrimination, and hostile work environment. *Id.* ¶¶ 24; 31. However, the parties conferred after Legacy filed its motion to dismiss and Ms. Ruotsalainen agreed to voluntarily dismiss all the theories except for failure-to-accommodate claims under Title VII and ORS 659A.030. Response ("Resp.") [18] at 1. Accordingly, I only considered Ms. Ruotsalainen's failure to accommodate claims. Oral argument was held on February 18, 2025. I issued an oral order granting Legacy's Motion to Dismiss [10] and stated I would issue an opinion expanding on my oral order. Mins. of Proceedings [24]. I entered a judgment dismissing Ms. Ruotsalainen's Complaint with prejudice on February 21, 2025. Judgment [25].

## LEGAL STANDARD

"Title VII claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006); *see also Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023). To make a prima facie case that an employer failed to accommodate a plaintiff's religious practices, a plaintiff must show "(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Berry*, 447 F.3d at 645 (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004)). Oregon's statutory counterpart to Title VII, ORS 659.030, is considered "identical to Title VII." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 n.2 (9th Cir. 1993).

## DISCUSSION

I conclude that Ms. Ruotsalainen's state law claim is time-barred because she did not file suit within 90 days of receiving a right-to-sue letter from BOLI. I also conclude that her exemption request did not properly inform Legacy of her religious objection to the vaccine, so she fails to plead a prima facie case for failure to accommodate under Title VII.

### A. Timeliness of State Law Claim

Legacy argues that Ms. Ruotsalainen's state law failure to accommodate claim should be dismissed for the independent reason that it is untimely under state law. Mot. [10] at 21. Ms. Ruotsalainen filed a complaint with BOLI, so Legacy argues she was required to file any lawsuit within 90 days of receiving a right-to-sue letter from BOLI. *Id.* She received her letter from BOLI on February 10, 2023, and did not file suit until June 26, 2024, over a year later.

ORS 659A.875 provides that a person who has filed a complaint under ORS 659A.820 must commence a civil action under ORS 659A.885 within 90 days after a 90-day notice is mailed to the complainant under ORS 659A.880." ORS 659A.875(2). The letter that Ms. Ruotsalainen received from BOLI on February 10, 2023, made abundantly clear she had 90 days from then to initiate her civil suit against Legacy. Shaddy-Farnsworth Decl, [11] Ex. 2. The BOLI letter stated this deadline several times:

> This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice.

*Id.* Ms. Ruotsalainen ignores this clear language and urges me to make new law and hold that the "Oregon Workplace Fairness Act changed Oregon's Statute of Limitations for all claims under ORS 659A.030 to 5 years or 90 days following the issuance of a right to sue letter from BOLI, whichever is longer, not whichever is shorter." Resp. [18] at 20, 23. I join my colleagues in this District and decline to do so. *See, e.g., Bowerman v. St. Charles Health Sys., Inc.*, WL 3276131, at *8 (D. Or. July 1, 2024); *Leland v. Supervalu Wholesale Operations, Inc.*, No. 3:19-CV-02076-IM, slip. op. at 8 (D. Or. Apr. 15, 2020). Accordingly, Ms. Ruotsalainen's failure to accommodate claim under ORS 659A.030 is time-barred and is dismissed with prejudice.

### B. Title VII Failure to Accommodate

In contrast to the exemption request she submitted, Ms. Ruotsalainen's Complaint included an explanation of her objections to the COVID-19 vaccine:

> Plaintiff Ruotsalainen is a Christian who holds sincere deep beliefs about the sanctity of life and strives to live as a Christian, loving her fellow humans to the best of her ability. She believes that her body is a temple of God, and she strives not to defile her body. Around 2015 she learned that vaccines could contain mercury, aluminum, aborted fetal cells and other ingredients. She started rejecting vaccines, GMO foods, deodorant, seed oils and other harmful substances to her body. She believes that God gave us our bodies to remain

>holy and undefiled, including from anything created, tested, or manufactured using aborted fetal cells. Plaintiff Ruotsalainen holds firm to the scripture "Therefore, since we have these promises, dear friends, let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God," 2 Corinthians 7:1.

Compl. [1] ¶ 17. Legacy argues Ms. Ruotsalainen fails to plead failure-to-accommodate claims for two primary reasons. First, her exemption request did not adequately inform Legacy of a religious conflict with the vaccine mandate, and any additional details in her Complaint cannot remedy that failure. Reply [19] at 5. Second, Legacy argues that even if she could go back in time and add the Complaint's details to her exemption request, it would still not be enough because her objections to the vaccine are secular preferences. *Id.* at 2.

First, I do not doubt the sincerity of Ms. Ruotsalainen's religious beliefs or that those beliefs prevented her from receiving the COVID vaccine. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) ("We may not and do not question the legitimacy of Jill Doe's religious beliefs regarding COVID-19 vaccinations."). Her exemption request and her decision to leave a job she cherished show the strength of her convictions. Shaddy-Farnsworth Decl. [11] Ex. 4 at 1-2. However, the key question before me is whether she informed Legacy of her religious conflict with the vaccine at the time she requested an accommodation.

An employee must share enough information about her "religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller*, 8 F.3d at 1439. Title VII applies a burden-shifting framework because an employer cannot be charged with failing to accommodate a religious need it did not know about. At oral argumethnt, Ms. Ruotsalainen presented two alternative arguments for why her exemption request was enough. First, she argued that the text of her request was enough because when read in context, it was clear that she was leaning on her religious beliefs to request an exemption to the vaccine mandate. She explicitly cited the Bible, identified herself as

5 – OPINION AND ORDER

a Christian, and shared that she believes her "body to be a temple of God (2 Corinthians 7:1)." Shaddy-Farnsworth Decl. [11] Ex. 4 at 1. Ms. Ruotsalainen argued Legacy should have made the logical inference that she was requesting a vaccine exemption due to her religious beliefs. Legacy responded that courts do not require employers to make guesses or fill in gaps about why a person's religious beliefs could lead them to have a conflict with an employment duty. Legacy convincingly argued that because people with the same religious beliefs could have different but equally religious objections to a vaccine, the burden must stay with the employee to articulate her personal conflict. Legacy pointed out that while Ms. Ruotsalainen referenced her religious beliefs, she also attached eight pages of medical and scientific information about alternative treatments to COVID.

I agree with Legacy that it was not properly informed of Ms. Ruotsalainen's religious objections to the vaccine at the time it received her exemption request. A reasonable reader of her request is not left with a firm conclusion that her objection to the vaccine was religious in nature. It is well-settled that "Title VII does not protect secular preferences." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998). A secular preference rooted in science would not cancel out a religious objection to the vaccine, but here, Ms. Ruotsalainen expressly refused to provide *any* explanation of her religious conflict. Shaddy-Farnsworth Decl. [11] Ex. 4 at 1 ("So NO, I am not explaining my religious beliefs to you."). It is understandable that Ms. Ruotsalainen may have found it religiously offensive to even be required to explain her religious beliefs to her employer, but Title VII requires more to trigger an employer's duty to accommodate.

Ms. Ruotsalainen's second argument suggests that even if the text of her exemption request created some ambiguity about whether her objections were religious or secular, Legacy was at least on notice of the possibility of a religious objection. Therefore, if Legacy wanted more details, it could have followed up with Ms. Ruotsalainen and asked questions. This argument fails for two

6 – OPINION AND ORDER

reasons. First, Ms. Ruotsalainen has cited no authority to suggest that employers are required to investigate an employee's potential religious objections on the mere suggestion they exist. Title VII places the burden on employees to communicate their religious conflicts with an employment duty. *Heller*, 8 F.3d at 1439. Second, even if the law suggested that investigation is a best practice when an employer is not sure, the text of Ms. Ruotsalainen's exemption request emphatically and in all caps stated she would not be explaining her religious beliefs to Defendant. Shaddy-Farnsworth Decl. [11] Ex. 4 at 1. It is understandable from Legacy's perspective that it did not follow up with Ms. Ruotsalainen to probe her religious convictions. In sum, because Ms. Ruotsalainen failed to inform Legacy of her religious conflict with the vaccine, she fails to plead a prima facie failure to accommodate claim. *Peterson*, 358 F. at 606. Because she cannot go back in time to amend her exemption request, her federal failure to accommodate claim is dismissed with prejudice because amendment would be futile. *Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1099 (9th Cir. 2024).

### C. Epilogue: A Reflection on Methodology

During oral argument, plaintiff argued that the methodology used in these cases is flawed. I agree. But since that basic methodology comes to me by way of the Ninth Circuit, this argument won't help her in this court.

Still, it's worth devoting some thought to how this methodology has produced results difficult to reconcile with religious liberty. Start with a plaintiff who fervently believes God has commanded her not to do something—here, not to get vaccinated. Assume this plaintiff believes it so fervently that she is willing to lose a job she loves rather than disobey this divine command.

Even so, in many such cases the law will tell this plaintiff that the central aspect of her belief is not religious, but secular.[2]

How did we get to such a place? It starts with trying to tease apart, in granular ways, which sentences of a plaintiff's exemption request are religious and which are secular. But this is a fool's errand. It puts courts right in the middle of a fundamentally religious process. Start with any core doctrine that is not self-effectuating, like "my body is a temple" or "honor the Sabbath day" or "love your neighbor." It is almost never enough, for the believer, to just sit in a chair and contemplate these beliefs. They must be put into practice in everyday life. And unless they have divinely authored follow up instructions, the process of enacting these beliefs typically involves some thought, study, discussion, and prayer, resulting in a decision about what the commandment requires. The entire enterprise is at the core of what it means to be a believer. But the law picks out one thread from this tapestry—the explanation of the conflict—and says, in effect, "if you happen to utter a statement about the real world, a statement about chemistry or biology or even history—then you have left the process of being a believer, and have become just one more secular speaker." This ignores what is really going on here, which is a believer struggling with how to live out her beliefs in her daily life. Maybe figuring out what a broad commandment requires of her will involve certain "factual" assertions; maybe she will even get some of those wrong. Or maybe she will be wrong on the factual assertions but still have the settled feeling that this is what God requires of her. However you slice it, this methodology enmeshes the courts into the heart of

---

[2] As explained earlier, the problem for this plaintiff is her initial refusal to provide any explanation. I also hold, above, that her subsequent, expanded explanation was not the operative one for purposes of this motion. But Legacy undertook to deal with her expanded explanation as part of its briefing here. That expanded explanation included her assertion that as a Christian she believes her body is a temple of God and he has commanded her not to defile it. And still Legacy calls this "unprotected medical beliefs rather than religious beliefs." Mot. [10] at 7.

8 – OPINION AND ORDER

the life of a believer. And in the end, it does so insultingly, by telling a believer that her rationale for sacrificing a job she loves isn't really religious at all, but merely secular. Or, to put it more plainly, it tells a believer, "You think you are doing what God has commanded you to do. But we, the courts, tell you that you are wrong about that. You are not acting on God's command, but only your own (likely mistaken) secular beliefs. So your sacrifice was in vain and you lose."

In much the same way, this methodology imagines a false distinction between religious beliefs, or "opinions," and secular knowledge. It sets up a system where religious people can believe whatever they want to believe, but the moment they leave the confines of their beliefs and start asserting actual facts, they leave the land of religious liberty and enter the material world. But in many religious traditions—at a minimum, Judaism, Christianity, and Islam—the core tenets of their religion are viewed as factual assertions about the material world. And so, for example, the statement "my body is a sacred gift from God and must not be defiled" is viewed, not as merely aspirational or mythical, but as a factual statement about the actual provenance of our bodies and what God has commanded us to do with them. To parse through which of various statements about how to treat our bodies are "factual" and which are religious, in the minds of many believers, mischaracterizes the very nature of religious belief.

A final problem with this methodology is that it favors established religious doctrines over individual answers to prayer. Imagine two different plaintiffs, each asserting the core religious belief that the human body is a divine creation and must not be defiled. Plaintiff One, a Jewish woman, seeks an exemption from eating pork. But she can take her belief in the sanctity of the human body a step further. She can point to Leviticus where Jehovah specifically commands her not to eat pork. Because she has a specific religious text that forbids a particular step she must not take, her explanation will be treated as religious. Plaintiff Two, a Christian woman, seeks a vaccine

9 – OPINION AND ORDER

exemption. Plaintiff Two, however, has neither text nor canonical commentary. She believes her body is a temple, and must not be defiled. She accepts the invitation throughout scripture—see, for example, James 1:5—and decides to ponder and pray. She studies it out, and comes to the settled conclusion that the vaccine will defile her body. Plaintiff Two will be placed on less deferential footing than One: her explanation for why she cannot get vaccinated will be scrutinized by a court, and it will decide whether that explanation is secular or religious in nature. If Plaintiff One had said, instead of citing Leviticus, that pork is more likely to spoil, or contain bacteria than other meat, she too would be put to the same tighter scrutiny. But the fact that she can point to chapter and verse carries the day for her. By this method, established religious doctrine is favored over individual's claims to inspiration.

    This can't be right. It is a methodology difficult to square with the core concepts of religious liberty. Worse, it cannot be done well. And when a worldwide, life threatening pandemic rears itself, all the incentives will be wrong. We will incentivize searching for some semblance of secularity, hidden in the exemption request like an ace of spades tucked away in the family Bible. In such a time, fundamentally religious people offering fundamentally religious explanations for their beliefs will be told that their explanations have been weighed in the balance and found wanting. And one will be left with the impression that nothing short of the handwriting of God on the wall of the courtroom will suffice.

## CONCLUSION

For the reasons stated, I GRANT in full Defendant's Motion to Dismiss [10]. Plaintiff's Complaint [1] is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 17th day of April, 2025.

MICHAEL W. MOSMAN
United States Senior District Judge